IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:12cr53-WHA |
| | ) | |
| WILLIAM WASH GARDNER, JR., | ) | |
| GARDNER ADRIAN COLE | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court are Defendant William Wash Gardner, Jr.'s ("Gardner") Motion to Suppress (Doc. #29) and Defendant Gardner Adrian Cole's ("Cole") Motion to Suppress (Doc. #31). Defendant Gardner seeks to suppress "all evidence and statements related thereto resulting from the search and seizure of the 2005 Ford F-150 pick-up truck on or about March 6, 2012," Gardner Mot. (Doc. #29) at 5, while Cole seeks to suppress "all items discovered" after the seizure, Cole Mot. (Doc. #31) at 6. The Government filed a Response (Doc. #40) to the Motions, and an Amended Response (Doc. #41) to correct some minor errors.

On May 30, 2012, the undersigned held an evidentiary hearing on the Motions. Sergeant Kevin Byrd ("Sergeant Byrd"), Callie Ogletree ("Officer Ogletree"), Corporal Joseph Dunn ("Corporal Dunn"), and Detective George Russell ("Detective Russell"), testified at the hearing. Defendants were present at the hearing and did not testify.

Upon consideration of the Motions to Suppress, the testimony and evidence submitted at the evidentiary hearing, and the briefs, the undersigned Magistrate Judge RECOMMENDS

that the Motions to Suppress (Docs. #29 & 31) be DENIED.

**I.     FACTS**

Based on the testimony at the hearing held on May 30, 2012, and to a preponderance of the evidence, the court finds the operative facts as follows:[1]

On or about March 6, 2012, Sergeant Byrd and his partner, Officer Ogletree, were on patrol in an unmarked vehicle in Montgomery, Alabama as part of the Special Response Bureau of the Montgomery Police Department ("MPD").  The Special Response Bureau generally patrols high crime areas.  At some point in the evening, during an unrelated traffic stop, Sergeant Byrd received a phone call from a confidential source with information that a dark colored truck with a Jefferson County license plate ("tag") would be in Montgomery, possibly transporting drugs.  At approximately 8:30 that night, Sergeant Bryd observed a dark colored Ford truck traveling near Baptist Hospital on the East South Boulevard with a Jefferson County tag.  The officer also observed that the stickers indicating the month and year of the tag registration were obscured by a tag cover.  The officers followed the vehicle as it drove westwardly toward Interstate 65 and ran the license number through the National

---

[1] The court reaches findings of fact at a suppression hearing based on a preponderance of the evidence.  *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Further, there was testimony produced at the hearing that was not germane to the issues presented for the court's consideration (such as testimony regarding the statements made by Defendants as well as testimony related to the reliability of the canine used at the scene of the traffic stop).  The court's recitation of the factual findings here are limited to those related to the issues raised by Defendants.

Crime Information Center ("N.C.I.C.").

The truck entered the interstate and headed north towards downtown Montgomery and the officers continued to follow. While on the interstate, Officer Ogletree, through the use of a GPS device, determined that the truck was traveling approximately 70 miles-per-hour in a 60 miles-per-hour speed zone. Based on the obscured tag and driving in excess of the speed limit, the officers decided to conduct a traffic stop. After stopping the truck, the officers approached the vehicle, Sergeant Bryd to the driver's side and Officer Ogletree to the passenger's side. In the truck were Defendants Gardner, the driver, and Cole, the passenger. Both officers testified that upon approaching the vehicle they could detect the smell of marijuana emanating from inside the vehicle. Sergeant Byrd also smelled what appeared to be recently sprayed air freshener and Officer Ogletree smelled and observed Cole, the passenger, smoking what appeared to be a cigarette. The officers requested and received identification from both defendants and returned to their vehicle to begin a check for warrant with a police dispatcher. They also called for a canine unit to perform an "open air sniff" of Defendants' truck.

Corporal Dunn, a canine handler, and a member of the Highway Safety Team of the Montgomery Police Department, received the call to conduct a canine sniff of Defendants' vehicle. Because he was traveling on Interstate 65 near the scene of the traffic stop, he arrived within 5 to 10 minutes after receiving the call. At the scene, Sergeant Byrd informed Corporal Dunn that he was conducting a traffic stop due to the obstructed tag and speeding.

Sergeant Byrd explained that he was in the process of "running checks" on the driver and passenger, and requested that Corporal Dunn "run a dog" around the vehicle.

Corporal Dunn testified that, as he approached the truck and spoke to Defendants, he could smell marijuana and a strong odor of air freshener coming from the vehicle. When he asked Defendants if he could run his dog around the truck as part of a search and if they would exit the vehicle, Defendants consented to the "dog sniff" and exited the vehicle. During the dog's walk around the truck, Daisy, the canine, "showed a strong interest" in the driver's side and rear tailgate of the truck, then "gave a final response" (by sitting down) on the passenger's side of the vehicle. Corporal Dunn, then put Daisy back in his own vehicle and informed Sergeant Byrd that Daisy had alerted for the presence of narcotics in Defendants' vehicle.

The officers then conducted a search of the vehicle and found approximately $6,450.00 in the center console of the truck and three packages of suspected cocaine in a bag of folding chairs in the bed of the truck. Defendants were handcuffed and transported to the Special Operations Division of the MPD where they were arrested and questioned. At some point after leaving the Special Operations Division and being transported to the city jail, the officers completed the traffic citations.

## II. DEFENDANTS' CLAIMS

Between them, Defendants raise four issues for this court's consideration. First, Defendant Gardner challenges the initial stop of the vehicle. Second, both Defendants

challenge the length of the stop. Third, Defendants challenge the subsequent search of the truck. Fourth, Defendants request suppression based on the "fruit of the poisonous tree doctrine." The court will address each of these issues below.

## III. DISCUSSION

### A. The Traffic Stop

Defendant Gardner challenges the traffic stop, arguing that "[t]he truck was stopped without any justification and there was no probable cause to believe that the truck's occupants had committed or were about to commit a crime, or that evidence of a crime was present in the car or that the occupants were armed and dangerous." Gardner Mot. (Doc. #29) at 3. In their briefing, the Government countered that the vehicle was stopped because is was speeding, and"[t]he stop was therefore valid under long-standing authority that a stop of a speeding vehicle is legitimate and not pretextual." Resp. (Doc. #40) at 5 (citing *United States v. Tapia*, 912 F.2d 1367, 1370 n.1 (11th Cir. 1990); *see also United States v. Hernandez*, 418 F.3d 1206, 1209 (11th Cir. 2005)). At the hearing, the officers testified that the vehicle was stopped due to an obscured license plate tag and for speeding. At the close of the hearing, Gardner challenged whether the license plate was truly obscured and whether the vehicle was speeding, asserting that the officers intended to stop Gardner's vehicle based on the anonymous phone call.

"[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806,

810 (1996). "The *Whren* Court squarely rejected the pretextual stop analysis that had prevailed previously in the Eleventh Circuit." *United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997). "Under the Fourth Amendment, a decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred, . . . and an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999)  Thus, Gardner's only legitimate challenge must be to whether the officers had probable cause to believe a traffic violation had occurred.

At the hearing, Gardner challenged the officers' allegations of an obscured tag, arguing that the court can review the photograph of the tag[2] to see that it is not obscured. Tr. 134. The court has reviewed the exhibit and finds that the officers' testimony regarding the obstruction of the month and year of the expiration dates of the tag was credible and that the officers had probable cause to believe that a violation had occurred. Quite simply, the bracket around the tag covers a majority of the stickers that indicate the month and year of license plate's registration.

As to the issue of speeding, Defendant argues that no probable cause existed because the officers did not have a radar detector and were using an un-calibrated GPS device. Tr. 133. However, "the Fourth Amendment does not require the use of radar detection to establish probable cause to believe a motorist is speeding." *United States v. Monzon-Gomez*,

---

[2] Def.s' Ex. 5.

244 F. App'x 954, 959 (11th Cir. 2007). "[T]he question is simply whether a law enforcement officer has sufficient cause to believe that a traffic law has been violated, not whether such a violation can be successfully prosecuted in court." *Id*. at n.3.[3] In this case, the officers testified that they observed what they believed to be Defendants' vehicle traveling in excess of the speed limit. There is no evidence of record contradictory to the officers' testimony and the court finds it credible. Accordingly, this court finds that there was probable cause to believe a traffic violation occurred and the officers lawfully made the traffic stop.

### B. *Length of the Traffic Stop*

Both Defendants argue that the traffic stop constituted an unconstitutional seizure because the length and scope of the stop exceeded the time necessary to effectuate the purposes of the stop. Generally, "the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop. The traffic stop may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (internal citations and quotations omitted). At the hearing, the officers testified that, upon approaching the vehicle, they smelled marijuana emanating from inside the vehicle and, on that basis, determined to conduct further investigation. "[T]he smell of marijuana alone may provide

---

[3] Counsel for Gardner asserted at the hearing that if he were defending the traffic violations in Montgomery City Court, he believed Gardner had a chance to prevail. Even were that true, it would not negate that the officers had probable cause to effectuate the traffic stop in this case.

a basis for reasonable suspicion for further investigation of possible criminal conduct." *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010). Thus, the officers provided "articulable suspicion of other illegal activity."

Although counsel for Defendants cross-examined the officers as to whether they could have reliably smelled marijuana emanating from the vehicle where the vehicle was parked on the side of the freeway, Cole had been smoking a cigarette or cigar, and where no marijuana was actually found in the car, the testimony before the court by three different officers was that there was a smell of marijuana coming from the cab of the truck. The court finds this testimony to be credible. Not only did both Sergeant Byrd and Officer Ogletree testify that they independently recognized the smell of marijuana, but Corporal Dunn, who arrived on the scene a few minutes later also testified that he smelled marijuana when he began his walk around the truck with his canine. That marijuana was not ultimately found within the vehicle does not negate the officers' articulable suspicion.

Once the officers believed that criminal activity may be afoot, they had a duty to investigate further. *United States v. Hernandez*, 418 F.3d 1206, 1211 (11th Cir. 2005). Under the totality of the circumstances, including the smell of marijuana and the short amount of time it took the canine officer to respond to the scene,[4] the court finds that the length of the detention was justified.

---

[4] Moreover, the officers testified that the canine unit arrived before Sergeant Byrd had completed the warrant check with dispatch.

### C.    *The Search of the Vehicle*

Defendants' arguments here are related to the initial stop and detention of the vehicle and they challenge whether there was justification to perform a warrantless search. The search of the vehicle in this case was not made pursuant to the odor of marijuana emanating from the vehicle. Rather, the search was made pursuant to the the canine "alerting" to illegal narcotics outside the vehicle.[5] "And because the canine gave a positive alert to the [truck, the officers] had probable cause to search the [truck] pursuant to the automobile exception to the warrant requirement." *United States v. Steed*, 548 F.3d 961, 975 (11th Cir. 2008) (citing *United States v. Tamari*, 454 F.3d 1259, 1264-65 (11th Cir. 2006) ("[T]he automobile exception permits warrantless vehicle searches if the vehicle is operational and agents have probable cause to believe the vehicle contains evidence of a crime . . . . We have long recognized that probable cause arises when a drug-trained canine alerts to drugs.")). Accordingly, the court finds the search to have been permissible.

### D.    *Fruits of the Poisonous Tree*

Defendants seek suppression of the items seized (narcotics and currency) and their statements under the "fruits of the poisonous tree doctrine." Under the fruit of the poisonous

---

[5] Defendants do not specifically challenge whether the officer's use of a canine during the traffic stop was warranted. The Supreme Court has held that where "the dog sniff was performed on the exterior of [a defendant's] car while he was lawfully seized for a traffic violation[,] [a]ny intrusion on [defendant's] privacy expectations does not rise to the level of a constitutionally cognizable infringement." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

tree doctrine, evidence, including verbal statements, obtained as a result of an unlawful search is subject to exclusion. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Defendants' arguments here are predicated on the notion that the traffic stop and its length were improper, and, thus, anything obtained as a result should be suppressed. However, "[Defendants'] Fourth Amendment fruit of the poisonous tree argument plainly collapses since, as [was] just explained, [their] Fourth Amendment rights were never violated." *United States v. Lopez-Garcia*, 565 F.3d 1306, 1315 (11th Cir. 2009).

**IV.    CONCLUSION**

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Motions to Suppress (Docs. #29 & 31) be DENIED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before July 11, 2012**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain

error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 27th day of June, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE